**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DERRICK RYAN B.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    **CIVIL ACTION** |
| **v.** | ) |
| | )    **No. 25-1237-JWL** |
| **FRANK BISIGNANO,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security

Income (SSI) benefits pursuant to sections 216(i), 223, and 1614(a)(3)(A) of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A) (hereinafter the Act).  Finding

no error in the Administrative Law Judge's (ALJ's) consideration and application of the

medical opinion of Ms. Headley, Plaintiff's Advanced Practice Registered Nurse

(APRN), the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

_____

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the
interest of protecting the privacy interests of disability claimants, it has determined to
caption Social Security decisions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for SSDI and SSI benefits on June 1, 2022. (R. 17, 209-25).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ excluded certain of Nurse Practitioner Headley's opined moderate mental limitations from the ALJ's residual functional capacity (RFC) assessment and erroneously failed to explain why they were excluded.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

3

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff notes Ms. Headley opined that Plaintiff had moderate mental limitations in the abilities to:  "understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting."  (Pl. Br. 11) (citing R. 1358-59).

Plaintiff acknowledges the ALJ found Ms. Headley's opinion only partially persuasive and found her "marked limitation in using public transport or traveling to unfamiliar places, as well as the off-task 25% and the missing four days of work per month, were not supported by or consistent with the medical evidence."  (Pl. Br. 11-12) (citing R. 27). He notes, "The ALJ found the mild and moderate limitations [opined by Ms. Headley] were supported by, and consistent with, the evidence," id. 11, but argues, "The ALJ, however, did not include the moderate limitations in the RFC or provide any explanation as to why they were excluded."  Id. 12.  In a footnote Plaintiff asserts Ms. Headley's opinion defined a moderate limitation as "[i]mpairment levels are compatible with some, but not all, useful functioning.  Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance."[2]  Id. at 11, n.2.

Plaintiff notes Social Security Ruling (SSR) 96-8p requires that "the RFC assessment 'must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence,'" and "the ALJ must explain why a medical opinion was not adopted if it conflicts with the RFC. Id. (quoting and citing SSR 96-8p, 1996 WL 374184 at *7).  He argues, "an ALJ must explain his reasons for accepting some of a physician's restrictions while rejecting others."  Id. (citing Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007)).  And he

---

[2] In the footnote, Ms. Headley is referred to as "Ms. Copeland" and her opinion is cited to page 2045 of the record.  However, Ms. Headley's opinion is located at R. 1358.  But the opinion does define a moderate limitation as cited in the footnote.  The court presumes Plaintiff's counsel used boilerplate language from a previously prepared brief and failed to update the healthcare professional's name and the record citation.

argues, "The ALJ failed in this case to provide any explanation as to why the moderate limitations from Ms. Headley's opinion were excluded from the RFC." Id.

He argues this error requires remand. Id., at 13 (citing Sharp v. Bisignano, No. 25-4014-EFM, 2025 WL 3003747, at *3 (D. Kan. Oct. 27, 2025); J.K. v. Bisignano, No. 24-2372-DDC, 2025 WL 2770493, at *3-4 (D. Kan. Sept. 26, 2025); and, Thomas N. v. Bisignano, No. 24-CV-1114-EFM, 2025 WL 2106831, at *4-5 (D. Kan. Jul. 28, 2025).

The Commissioner argues remand is not warranted because the ALJ's RFC assessment is supported by the record evidence and sufficiently accounts for the mental abilities assessed as moderately limited in Ms. Headley's opinion. (Comm'r Br. 3). The Commissioner notes that the ALJ considered all the prior administrative medical findings and medical opinions respecting Plaintiff's mental abilities. He noted the ALJ found the prior administrative medical findings of the state agency psychological consultants (that Plaintiff's depressive disorder was not severe) were "not persuasive because subsequent evidence showed that Plaintiff responded well to mental health treatment but 'his treatment record[s] indicate some ongoing mood instability, which supports a finding of moderate limitations.'" Id. 4. He found the opinion in the consultative examination by Dr. Thayer (that Plaintiff can perform complex tasks) "was not persuasive because, while 'generally supported by [Dr. Thayer's] largely unremarkable examination findings, it is not entirely consistent with [Plaintiff's] subsequent mental health treatment records, which render additional restrictions appropriate.'" Id. (quoting R. 27) (brackets in Comm'r Br.). Finally, the Commissioner noted that the ALJ found Ms. Headley's opinion only partially persuasive, noting "that Nurse Headley opined Plaintiff 'generally

6

has only mild to moderate limitations in his work-related functional abilities' and found

Nurse Headley's opinion in this regard 'supported by, and consistent with, [Plaintiff's]

treatment records, and mental status findings.'" (Comm'r Br. 4) (quoting R. 27).

The Commissioner noted the ALJ provided her reasons for discounting Ms.

Headley's other limitations. Id. He argues,

> Nurse Headley's moderate ratings are akin to the "Section I" ratings made
> by State agency psychological consultants before providing their ultimate
> narrative RFC findings. But agency policy on such moderate ratings makes
> clear that they are not standalone. Rather, both "[t]he degree and extent of
> the capacity or limitation must [also] be described in narrative format in
> Section III." Program Operations Manual System (POMS) DI
> 24510.063(B)(2). Agency policy also expressly directs that mental RFC
> assessments should not include severity ratings or nonspecific qualifying
> terms, such as "moderate" or "moderately severe," because such terms "do
> not describe function and do not usefully convey the extent of capacity
> limitation. POMS DI 24510.065(B)(1)(c)"

Id. 5. He argues that because Nurse Headley did not provide any narrative indicating the

degree and extent of the moderate limitations she [opined], and her checkbox ratings did

not convey such RFC-relevant information, either, [t]hey did not warrant inclusion in the

[ALJ's] RFC."

> He argues

> it is well-established that an ALJ may incorporate moderate ratings into
> their RFC finding without repeating them verbatim. See Smith [v. Colvin],
> 821 F.3d [1264,] 1268-69 [(10th Cir. 2016)]. Where the record supports it,
> an ALJ may properly account for moderate limitations by limiting a
> claimant to particular kinds of work activity. See id.; see also Vigil v.
> Colvin, 805 F.3d 1199, 1203-04 (10th Cir. 2015).

Id. 6. He notes that although Nurse Headley opined as to moderate limitations, "she did

not specify any particular [functional] RFC limitations," and the ALJ's RFC captured the

7

moderate limitations opined by her "even though the ALJ did not repeat the [moderate] rating categories verbatim." (Comm'r Br. 6). He concludes,

> The ALJ's RFC findings are supported by substantial evidence and sufficiently accounted for Nurse Headley's checkbox ratings, which the ALJ reasonably observed to amount to an opinion that Plaintiff "generally has only mild to moderate limitations in his work-related functional abilities" (AR 27). Nothing more was required here.

Id. 7.

In his Reply Brief, Plaintiff reiterates his earlier arguments. He counters the Commissioner's argument that such terms as moderate or moderately severe do not describe functional limitations by arguing

> A "moderate" limitation was defined by Mr. Headley opinion [sic] as "[i]mpairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." (Tr. at 1358). Such definition provides more concrete functional information than merely the term "moderate" and thus, contrary to Defendant's argument, warranted inclusion in the RFC.

(Reply 2). He argues, "courts have held that moderate limitations, with or without the additional definition provided by Ms. Headley, need to be accounted for in the RFC or the ALJ must provide an explanation for their exclusion." Id. (citing J.K., 2025 WL 2770493, at *4; Thomas N., 2025 WL 2106831, at *4, *6; and Spiers v. Colvin, 2024 WL 5245089, at *4 (W.D. Mo. Dec. 30, 2024). He argues that despite the Commissioner's assertion the ALJ's Mental RFC assessment captured the mental limitations opined by Ms. Headley, Ms. Headley "did not opine that [Plaintiff] simply had 'moderate' limitations in broad areas of functioning. She opined he had a defined degree of limitation in very specific work-related mental abilities," and the ALJ's RFC assessment

8

failed to include or address Plaintiff's limitations in those specific areas.  (Reply 2-3).

Plaintiff provided an explanation of his understanding of Ms. Headey's opinion regarding

the ability to make judgements:

> the ALJ's finding [was] that [Plaintiff] could make judgments on work-related decisions that were "commensurate" with simple instructions.  (Tr. at 23).  In contrast, Ms. Headley specifically found [Plaintiff] suffered a moderate limitation in his ability to make simple work-related decisions.  (Tr. at 1359).  So, while the ALJ found no limitation in making judgments on decisions that were commensurate with simple instructions, Ms. Headley found a 30% reduction in that ability.

Id. 3.

### A.    The ALJ's Relevant Findings

The ALJ assessed Plaintiff with the Mental RFC to

> understand, remember, and carry out simple instructions, with normal breaks, and can make judgments on commensurate work-related decisions. He can have frequent interaction with co-workers, supervisors, and the general public.  The claimant can deal with changes in a routine work setting that is [sic] consistent with the aforementioned limitations.

(R. 23).

He evaluated the persuasiveness of the prior administrative medical findings of the

state agency psychological consultants, Dr. Locke and Dr. Bergmann-Harms and the

medical opinions of Dr. Thayer and Ms. Headley.  (R. 26-27).

> The prior administrative medical findings of Thomas Locke, Ph.D., and Elizabeth Bergmann-Harms, Ph.D., are not persuasive (Exhibits 1A, 3A, 5A, 7A). While Dr. Locke and Dr. Bergmann-Harms supported their findings with detailed explanations, their assessments, which indicate that the claimant's depression is non-severe, are not consistent with the evidence. While the claimant does appear to have responded well to mental health treatment, his treatment records indicate some ongoing mood instability, which supports a finding of moderate limitations (Exhibits 16F, 18F).

The opinion of consulting psychologist Richard Thayer, Psy.D., is not persuasive (Exhibit 7F). While Dr. Thayer's opinion, that the claimant can perform complex tasks, is generally supported by his largely unremarkable examination findings, it is not entirely consistent with the evidence, including the claimant's subsequent mental health treatment records, which render additional restrictions appropriate (Exhibits 16F, 18F).

The opinion of Cheryl Headley, APRN, is partially persuasive (Exhibit 14F). Nurse Headley opines that the claimant generally has only mild to moderate limitations in his work-related mental functional abilities, which is supported by, and consistent with, his treatment records, and mental status findings. Portions of Nurse Headley's opinion, however, are not supported. For instance, her opinion that the claimant would be off task 25 percent, or more of the workday, is not consistent with the claimant's mental status examinations, which have found intact attention, and concentration. Her opinion that the claimant would miss four days of work per month is not explained, and is not supported by his treatment records which, as discussed above, indicate that he has responded well to medication, and is generally stable. Finally, Nurse Headley's opinion that the claimant has marked limitations in using public transportation, or traveling to unfamiliar places, is without evidentiary support.

(R. 26-27).

In evaluating Plaintiff's moderate limitations in the four broad mental functional areas, the ALJ cited Nurse-Practitioner Headley's treating records (Exs. 16F, 18F) in finding intact memory abilities and no significant cognitive deficits, paranoia symptoms improved with medication, intact attention span and concentration, suicidal ideation without intent or a plan which improved with treatment, and in more recent appointments Plaintiff denied having suicidal thoughts. (R. 22). She found the evidence does not support finding more than moderate limitations. Id.

## B.    Analysis

Plaintiff argues that an ALJ that accepts some of a medical source's opinions and rejects others must explain why she rejected those opinions. SSR 96-8p. The court

agrees.  This is a case on point.  As quoted above, the ALJ here accepted Ms. Headley's

opinion respecting Plaintiff's "mild to moderate limitations in his work-related mental

functional abilities" (R. 27) but rejected her opinions respecting marked limitations and

other limitations and explained her bases for rejecting those opinions.  Id.  Plaintiff

acknowledges the ALJ accepted Ms. Headley's opinion respecting mild and moderate

limitations but argues that she, in fact, rejected some of them without explanation

because she did not include them verbatim in the Mental RFC assessed.

As the Commissioner points out in his Brief, the POMS requires an RFC to be

stated in terms of functional limitations not in terms of severity such as "moderate," or

"severe" which do not express the functional abilities or limitations of the claimant.

POMS DI 24510.065(B)(1)(c).  Thus, it is improper for the ALJ to state in her Mental

RFC that Plaintiff has a moderate limitation in his ability to make simple work-related

decisions as Ms. Headley opined because that does not state of what functional decision-

making ability Plaintiff is capable.  The ALJ however expressed that limitation as the

ability to make work-related decisions commensurate with the ability to understand,

remember, and carry out simple instructions.  (R. 23).  This is an ability that has been

expressed in functional terms.

Plaintiff attempts to overcome this deficiency in his argument by suggesting that

the definition of "Moderately Limited" on Nurse Practitioner Headley's opinion form

provides a specific measure of a 30% reduction in the ability to make simple work-related

decisions.  (Reply 3).    This argument fails for two reasons.  First, the definition provided

on Ms. Headley's opinion form states the moderate limitation is "Considered to be 1

standard deviation below the norm, or 30% overall reduction in performance." (R. 1358). The "norm" in the ability to make work-related decisions would be the ability expressed by the mean, or average, individual in the entire population of individuals making work-related decisions, including surgeons, engineers, lawyers, truck drivers, production workers, and the occupations of which the ALJ found Plaintiff capable here—Bottle Packer, Cleaner, and Assembler. However, neither Ms. Headley nor Plaintiff has demonstrated what the mean ability is or what ability is 30% less than that mean and the court has not found a vocational authority denoting such a breakdown. Moreover, Plaintiff appears to argue that the ability at issue is merely the ability to make simple work-related decisions and that a moderate limitation would require a 30% reduction in the ability to make simple work-related decisions. This just compounds the problem at hand because neither the opinion form, Ms. Headley, nor Plaintiff defines or points to admissible authority establishing the mean ability to make simple work-related decisions or what ability constitutes a 30% reduction therefrom.

Second, and more importantly, "moderate limitation" in a mental ability is a term of art defined in the Social Security regulations: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00F(2)(c). Because the definition of a moderate limitation is a term of art, an ALJ must use this definition regardless of the definition a claimant or his counsel provides to a mental health practitioner in asking her to complete an opinion. A claimant, his counsel, or a healthcare provider may not provide an idiosyncratic definition to a term of art and expect the agency to use that definition. Moreover, as explained

above, the definition used by Ms. Headley does not provide any meaningful functional limitation.

Thus, what the record reflects is that the ALJ accepted Ms. Headley's moderate limitations and incorporated them into her Mental RFC. Yet, Plaintiff disagrees and argues the ALJ rejected some of Ms. Headley's moderate limitations and this is error. However, in a Social Security disability case Plaintiff has the burden to demonstrate error in the RFC assessed by the Commissioner between the third and fourth steps of the sequential evaluation process. In this case that means she must demonstrate that the RFC assessed does not account for the moderate limitations assessed by Ms. Headley. She has not done so. As the regulations define and as the ALJ found, Plaintiff has a fair ability to function independently, appropriately, effectively, and on a sustained basis in each ability at issue here and is able to perform the Mental RFC assessed. The ALJ explained the bases for her decision and it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401. To demonstrate error in that finding Plaintiff must point to record evidence which compels a contrary finding, and she has not done so. In fact, she admits Ms. Headley's report leaves it "unclear what specific impact such moderate limitations may have on [Plaintiff's] ability to work." (Pl. Br. 15).

The court finds Plaintiff's appeal to the district court cases of Sharp, 2025 WL 3003747, at *3; J.K., 2025 WL 2770493, at *3-4; Thomas N., 2025 WL 2106831, at *4-5; and Spiers, 2024 WL 5245089, at *4 is unavailing because the court finds them unpersuasive. To the extent that they find the RFC assessed in each case is inconsistent

13

with a portion of the medical provider's opinion which the ALJ accepted, the court agrees

that is error and remand was required.  To the extent they may be viewed as requiring an

ALJ to include an additional functional limitation for each moderate limitation opined by

a medical care provider and accepted by the ALJ, the court disagrees for the reasons

explained above.

     **IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

     Dated July 6, 2026, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

14